IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOANNE CABE,			)
					)
			Plaintiff,	)
					)
	vs.				)
					)
ANDREW M. SAUL, COMMISSIONER OF	)
SOCIAL SECURITY,			)
					)	No. 5:20-cv-0012-HRH
			Defendant.	)
_____	)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. Plaintiff Joanne Cabe has timely filed her opening brief[1] to which defendant, Andrew M. Saul, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On December 21, 2015, plaintiff filed an application for disability benefits under Title II, alleging that she became disabled on July 15, 2012. Plaintiff alleges that she is disabled due to chemical sensitivity, reactive airway disease, cardiac arrhythmia, hypoxia,

---

[1]Docket No. 18.

[2]Docket No. 19.

hypothyroid, and chronic fatigue. Plaintiff's application was denied initially on December 2, 2016, and she requested a hearing. An administrative hearing was held on April 3, 2018. On September 28, 2018, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review by the Appeals Council, and on September 10, 2019, the Appeals Council remanded the matter to the ALJ. On February 11, 2020, another administrative hearing was held. On March 26, 2020, the ALJ again denied plaintiff's application. On August 31, 2020, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 26, 2020 decision the final decision of the Commissioner. On October 8, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

## General Background

Plaintiff was born on October 24, 1961. Plaintiff was 50 years old on her alleged onset date and 55 years old on her date last insured. Plaintiff has a high school education and two years of college. Plaintiff's past work includes work as a bookkeeper and a sawmill operator.

## The ALJ's Decision

The ALJ found that plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2016."[3] Because this is a Title II case, plaintiff must establish

---

[3]Admin. Rec. at 18.

disability prior to the date last insured. Flaten v. Sec. of Health & Human Srvcs., 44 F.3d 1453, 1458 (9th Cir. 1995).

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of July 15, 2012 through her date last insured of December 31, 2016. . . ."[5]

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 18.

At step two, the ALJ found that "[t]hrough the date last insured, the claimant had the following severe impairments: allergies and hyperreactive airway disease. . . ."[6] The ALJ found plaintiff's hypothyroidism was nonsevere.[7] The ALJ also found that plaintiff did not have any medically determinable mental health impairments.[8]

At step three, the ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[9] The ALJ considered Listing 3.03 (asthma).[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that

> through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoidance of concentrated exposure to excessive vibration and hazardous machinery; and avoidance of moderate

---

[6]Admin. Rec. at 18.

[7]Admin. Rec. at 18.

[8]Admin. Rec. at 18.

[9]Admin. Rec. at 19.

[10]Admin. Rec. at 19.

exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas.[11]

The ALJ discounted plaintiff's pain and symptom statements because they were inconsistent with her daily activities, because she traveled to Boston once per year, and because her statement that she was allergic to wood was inconsistent with the record.[12] The ALJ also appeared to discount plaintiff's pain and symptom statements because they were inconsistent with the medical evidence.[13]

The ALJ gave great weight[14] to the opinion of Dr. Andersen.[15] The ALJ gave some weight[16] to Dr. Brown's opinion.[17] The ALJ also gave some weight to Dr. Buscher's January 2016 opinion.[18]

---

[11] Admin. Rec. at 19.

[12] Admin. Rec. at 22.

[13] Admin. Rec. at 22.

[14] Admin. Rec. at 21.

[15] Dr. Andersen testified as a medical expert at the second administrative hearing. He testified that plaintiff would not have any "exertional or postural, manipulative, visual, or communicative limitations" but that she should avoid concentrated vibration and hazards and "moderate exposure to fumes, odors, dusts, gases[.]" Admin. Rec. at 40.

[16] Admin. Rec. at 22.

[17] On November 30, 2016, Dr. Roy Brown opined that plaintiff should avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, and hazards, but had no other limitations. Admin. Rec. at 104-105.

[18] Admin. Rec. at 22. Dr. Buscher's January 2016 opinion is discussed below in detail.

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a bookkeeper."[19]

The ALJ made alternative step five findings that "there were other jobs that existed in significant numbers in the national economy that the claimant also could have performed," including that of an office helper, a cashier, and a garment sorter.[20]

Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 15, 2012, the alleged onset date, through December 31, 2016, the date last insured. . . ."[21]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether

---

[19]Admin. Rec. at 23.

[20]Admin. Rec. at 23-24.

[21]Admin. Rec. at 24.

substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred as to Dr. Buscher's opinions. Plaintiff began treating with Dr. Buscher of Northwest Center for Environmental Medicine, which is located in Seattle, Washington, in June 12, 2012.[22]

On June 16, 2014, Dr. Buscher opined that plaintiff was "basically medically disabled and unemployable because of her chemical sensitivities."[23] On January 6, 2016, Dr. Buscher opined that plaintiff could stand for one hour; could sit for 6-8 hours; could reach above shoulders, down to waist, and handle objects carefully with fingers frequently; could rarely reach down to the floor; could regularly lift/carry 5-10 pounds; would have some difficulty bending, squatting and kneeling; and "would not be able to tolerate most, if not all,

---

[22]Admin. Rec. at 1067.

[23]Admin. Rec. at 647.

workplace environments" because of her chemical sensitivities.[24]  On June 18, 2018, Dr. Buscher opined that plaintiff "is not employable in any type of situation where she is exposed to chemicals such as detergents, perfumes, fabric softener, deodorants, etc.[,]" but that "[a]s long as she is not exposed to chemicals, she is fairly functional."[25]  He opined that she would be absent from work 2-3 times a week and that she would need extra breaks.[26]  And, on April 9, 2019, Dr. Buscher opined that plaintiff "would not be suitable for sustained employment because of her asthma condition and chemical sensitivities, which would cause her to have excessive work absences."[27]

Dr. Buscher was a treating source.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Dr. Buscher's opinions were contradicted by Dr. Andersen's opinion. Thus, the ALJ was required to give specific and legitimate reasons for discounting Dr. Buscher's opinions.

---

[24]Admin. Rec. at 456-458.

[25]Admin. Rec. at 1081.

[26]Admin. Rec. at 1082.

[27]Admin. Rec. at 1108.

Plaintiff first argues that the ALJ erred in discounting Dr. Buscher's January 6, 2016 opinion. The ALJ gave Dr. Buscher's January 6, 2016 opinion "some weight" but discounted this opinion because the standing limitation was not supported by the record, because plaintiff did not have any positive respiratory findings on exam, and because it appeared to be based solely on plaintiff's subjective complaints.[28] The court considers these reasons in reverse order.

First, the ALJ discounted Dr. Buscher's January 2016 opinion because it was based solely on plaintiff's subjective complaints. This was not a legitimate reason because Dr. Buscher ran a number of diagnostic tests and labs. In fact, Dr. Buscher noted in his January 2016 opinion that plaintiff's office visits included allergy testing and laboratory testing and that the results of the allergy testing were extreme as to mold, dust, and chemicals and that the laboratory testing showed elevated lead and mercury.[29] As another example, on September 5, 2013, Dr. Buscher noted that plaintiff's labs "indicate[d] exposures to solvents such as xylene, toluene."[30]

Secondly, the ALJ discounted Dr. Buscher's January 2016 opinion because plaintiff did not have any positive respiratory findings on exam. This was not a legitimate reason, in part, because Dr. Buscher explained the lack of clinical respiratory findings. In an April 9,

---

[28] Admin. Rec. at 22.

[29] Admin. Rec. at 455.

[30] Admin. Rec. at 649.

2019 letter, Dr. Buscher noted that there is "[n]o test of physiological function [that] can explain" the symptoms caused by multiple chemical sensitivity and that "[a]lthough there may be clinical abnormalities, such as bronchospasm or neuropsychological dysfunction, these are insufficient to explain the illness pattern."[31] Courts have also observed that "[t]he diagnosis of a multiple chemical sensitivity is a tricky one, because it is, by its very nature, idiosyncratic and difficult to assess objectively." Teitelbaum v. Astrue, Case No. CV 10–07167 RZ, 2011 WL 5293278, at *1 (C.D. Cal. Nov. 3, 2011). In addition, Dr. Hu, an examining physician, explained that MCS "is not accompanied by consistent physical or laboratory findings."[32] Moreover, plaintiff's symptoms were not only respiratory. For example, in his January 2016 opinion, Dr. Buscher noted that plaintiff has severe abdominal pain with exposure to chemical toxins.[33]

Finally, the ALJ discounted Dr. Buscher's January 2016 opinion because the standing limitations were not supported by the record. Plaintiff makes no argument as to this reason, probably because it was a legitimate reason. There is little to no medical evidence that suggests that plaintiff would only be able to stand for one hour.

But, plaintiff's ability to stand for more than one hour was a very minor portion of Dr. Buscher's opinion. Even if plaintiff were assumed to be able to stand for a full eight-hour

---

[31]Admin. Rec. at 1107.

[32]Admin. Rec. at 742.

[33]Admin. Rec. at 770.

workday, she was plainly at risk of being unable to maintain full-time employment because of the likelihood that she would - in the course of going to and from work, contacting customers or fellow employees, or coming into contact with job site environments – be exposed to irritants that would disable her for a day or two. Thus, this one legitimate reason does not provide sufficient support for the ALJ's discounting of Dr. Buscher's January 2016 opinion. The ALJ erred as to this opinion.

Plaintiff also argues that the ALJ erred as to Dr. Buscher's other opinions. The ALJ did not mention or discuss these other opinions other than to state that all of Dr. Buscher's opinions appeared to be based solely on plaintiff's subjective complaints.[34] As discussed above, this was not a legitimate reason to discount or reject Dr. Buscher's opinions. But, as to Dr. Buscher's 2018 and 2019 opinions, this error was harmless because these opinions were offered after plaintiff's date last insured, which was December 31, 2016. See Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) ("[b]ecause Dr. Riopelle examined and diagnosed Macri's depression well after his injury and the expiration of his disability insured status, it affords little weight and is not reliable"). The same cannot be said as to the 2014 opinion as this opinion was rendered during the relevant time. As for any argument that the ALJ did not have to consider the 2014 opinion because it was simply an opinion that plaintiff was disabled, that argument fails. Although this is "an issue [that] is reserved to the Commissioner, the ALJ still must set forth specific, legitimate reasons for rejecting a treating

---

[34]Admin. Rec. at 22.

physician's opinion that a claimant is disabled." Herrera v. Colvin, Case No. ED CV 14-1340-E, 2015 WL 12697712, at *3 (C.D. Cal. April 20, 2015) (citation omitted). The ALJ did not do so as Dr. Buscher's 2014 opinion and thus the ALJ erred as to the 2014 opinion.

Plaintiff next argues that the ALJ erred as to Dr. Hu. Dr. Hu, an examining physician, opined that plaintiff was

> significantly disabled by the ES/MCS condition, in that you are unable to work in what overwhelmingly constitutes a "normal" or typical workplace because of the disabling symptoms you experience when exposed to relatively low levels of fragrance products, cleaning products, motor vehicle exhaust, paint and sealing products, etc. It is also my opinion that your condition and associated disability is chronic, and not likely to improve in the foreseeable future (and certainly not in the next 3 years unless there were unforeseen advances in scientific research on this disorder).
> It is possible that you could engage in some type of meaning[ful] work if accommodations were made through the use of avoidance, ventilation, and other strategies. These are typically best met, in my experience, through the identification of employment that can be undertaken in a typical patient's home environment (assuming that the patient has been able to create a home environment that is free of exposures that trigger his or her symptoms). However, there can be no guarantees, and such accommodations, when successful, typical[ly] occur through trial-and-error.[35]

The ALJ did not mention Dr. Hu's opinion in her decision. This was error. As plaintiff acknowledges, Dr. Hu examined her and offered his opinion in November 2017, which was after the expiration of her date last insured on December 31, 2016. However, the

---

[35]Admin. Rec. at 743.

-12-

ALJ was still required to consider Dr. Hu's opinion because "'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" Lester, 81 F.3d at 832 (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)); see also, Taylor v. Comm'r of Social Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011) (same). Here, there is no evidence that plaintiff's condition improved or changed in the year between the expiration of her insured status and Dr. Hu's examination. Thus, the ALJ should have considered Dr. Hu's opinion. Her failure to even mention Dr. Hu's opinion was error. This error cannot be considered harmless, because in contrast to Dr. Buscher's 2018 and 2019 opinions, Dr. Hu's opinion was offered much closer in time to plaintiff's date last insured.

Finally, plaintiff argues that the ALJ erred in discounting her pain and symptom statements. "An ALJ engages in a two-step analysis" in evaluating "a claimant's testimony regarding subjective pain or symptoms. . . ." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity

thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm't of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ discounted plaintiff's pain and symptom statements because they were inconsistent with her daily activities, because she traveled to Boston once per year, and because her statement that she was allergic to wood was inconsistent with the record.[36] The ALJ also appeared to discount plaintiff's pain and symptom statements because they were inconsistent with the medical evidence as set forth by the ALJ.[37] Plaintiff argues that these were not clear and convincing reasons.

As for the first reason, the ALJ cited to plaintiff's statements that "she went for walk for up to an hour a day and lived in a tent that was .75 miles from her house[;]" "that she cared for her husband and son and would cook and perform some cleaning for her household[;]" "that she cared for her dog by preparing it food and water and brushing[;]" and that "she was able to wash dishes, vacuum, launder clothes, stack firewood, and shop in

---

[36]Admin. Rec. at 22.

[37]Admin. Rec. at 22.

stores[.]"[38] But, "the mere fact that" plaintiff "has carried on [these] "daily activities . . . does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Plaintiff reported that she could cook and perform other household chores "as my reactions [and] energy allows," meaning that she could not always do such tasks.[39] Plaintiff also reported that she has difficulties caring for the dog because of her allergies and that she cannot brush him often.[40] Plaintiff also reported difficulties with shopping in stores due to scents and reported that she eventually stopped going to the grocery store.[41] Thus, plaintiff's report of daily activities was not inconsistent with her pain and symptom statements.

The second reason the ALJ gave for discounting plaintiff's pain and symptom statements was the fact that plaintiff was able to travel to Boston once a year,[42] which is where plaintiff's elderly mother lived.[43] This was not a clear and convincing reason because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

---

[38]Admin. Rec. at 22.

[39]Admin. Rec. at 383.

[40]Admin. Rec. at 383.

[41]Admin. Rec. at 42.

[42]Admin. Rec. at 22.

[43]Admin. Rec. at 698.

The third reason given by the ALJ was that plaintiff "testified that she is highly allergic to wood but is having a log house built and indicated that she stacks firewood as part of her daily activities. She also testified that she currently lives in a tent in the summer and a wood house in the winter, which is inconsistent with an allergy to wood."[44] This was not a clear and convincing reason. First, plaintiff did not testify or report that she was allergic to wood. Rather, plaintiff stated that she is sensitive to fragrant wood, such as cedar, and the chemicals used to treat wood.[45] Second, plaintiff never testified that she was having "a log house built." Rather, she explained to the ALJ that she was having a "cabin" built that would be as "low-chemical as possible. . . ."[46] And, while plaintiff does live in a wood house in the winter, she also testified that "there are many things" in that house that make her sick and she does not stay in the house any more than necessary.[47]

The ALJ also seemed to vaguely suggest that plaintiff's pain and symptom statements were inconsistent with the summary of medical evidence set out in the ALJ's decision. This could not be considered a clear and convincing reason for discounting plaintiff's pain and symptom statements because "'providing a summary of medical evidence . . . is not the same as providing clear and convincing <u>reasons</u> for finding the claimant's symptom testimony not

---

[44]Admin. Rec. at 22.

[45]Admin. Rec. at 86, 90.

[46]Admin. Rec. at 90-91.

[47]Admin. Rec. at 91.

credible.'" Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015)).

Defendant also argues that the ALJ properly discounted plaintiff's pain and symptom statements because the record shows that she was responding to conservative treatment. But, this was not a reason given by the ALJ, and "[l]ong-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225. The court can only review the reasons provided by the ALJ, and here, those reasons were not clear and convincing. The ALJ erred in discounting plaintiff's pain and symptom statements.

Because the ALJ erred, the court must determine whether to remand this matter for an award of benefits or for further administrative proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further

administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Plaintiff does not request a remand for an award of immediate benefits. She only requests a remand for further proceedings. The court agrees that further proceedings are necessary here, primarily to determine if, as Dr. Buscher opined in his 2016 opinion, there would be any work plaintiff could do if she were precluded from working in most, if not all, workplace environments.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 23rd day of June, 2021.

/s/ H. Russel Holland
United States District Judge